Good afternoon, Illinois Appellate Court, 1st District Court is now in session. The 5th Division, the Honorable Justice Matthias Delort presiding, case number 2-0-0-5-7-4, Charles Green v. Chicago Police Department. Good afternoon, everyone. Welcome to the Illinois Appellate Court, 5th Division. We're going to ask to start, the lawyers who are going to argue, can you please identify yourselves and tell us who you represent, beginning with the appellant, which is the City of Chicago. Good morning, Your Honor. Miriam Zarechny-Casper for the City of Chicago, excuse me, for the Chicago Police Department. And for the Plaintiff Appellee, Charles Green. Good afternoon, Jared Kozaklad for Mr. Green. Thank you very much, Counsel. We are going to allow about 15 minutes for each side. We may go longer if we have lots of questions. Please remember to speak clearly so that everything is heard in this rather different environment. We will also give the City an extra five minutes for rebuttal at the end. And you may proceed when ready, Ms. Casper. Thank you, Your Honor, and may it please the Court. The judgment should be reversed. The Circuit Court lacked jurisdiction to order production of records that it agreed were properly withheld, and the resulting burden on the Chicago Police Department will be in the millions of dollars and a decade of work. Turning first to the jurisdictional issue, the Circuit Court ruled that CPD did not improperly withhold complaint register files from 1967 to 2011. That should have been the end of the matter. At the time of the FOIA request, production of those files was prohibited by an injunction, and under the In Re Special Prosecutor case, records are not improperly withheld when a court order bars their production. Can I ask you a question, Ms. Casper? The injunction that you're talking about prohibited the production of records more than four years after the filing, I believe, of the Tribune's FOIA request. Is that correct? I believe that's correct, yes. And that FOIA request on the part of the Tribune was August 2011, or pardon me, 2014. Is that right? I will accept that, Your Honor. I would have to look to be sure. So your injunction only ran from prior to August 2010. What happened to September through December of 2010? It's not covered by the injunction. As I understood the record in this case, the injunction did not cover 2011 through 2015, but it did cover... The injunction in this case specifically covered CR files that were more than four years old at the time of the filing of the FOIA request. And that would mean anything older than August of 2010. But it doesn't cover September, October, November, and December of 2010. You keep talking about 2011, but the fact of the matter is the injunction didn't run until December 31st of 2011. So what do we do with those five months or four months? Your Honor, we... I certainly agree with you that the injunction, if you failed to withhold and there was a valid injunction, you've not wrongfully withheld. That's INRAE Special Prosecutor and the U.S. Supreme Court decision it relies on. But I have a problem with these files from August 2010 until January of 2011. I would need the opportunity to look into the precise dates, Your Honor, but as consistent with the position that we've taken in this case, anything covered by the injunction was properly withheld. No, I don't understand that argument. I understand that argument. Well, we certainly look at those dates once again, Your Honor. Well, Ms. Casper, I have a question. So assuming for the moment, following up on Justice Hoffman's question, that as you've just stated, anything covered by the injunction didn't need to be produced. Assuming for the moment that Justice Hoffman is correct and there were four months that were covered by the injunction, are you conceding that those months, the files during those months should have been produced? At this point, I'm not conceding. I'm not familiar with that. I didn't view the dates that way. We've never litigated it that way. And plaintiff has certainly never argued that there were four months that were improperly withheld. No, I think we're just the I'm just expecting you to know the date that the injunction that the request was filed. So the specific date that the request was filed, I think, and the date that the injunction was entered, those are the operative dates that go to that underpin the questions that Justice Hoffman just asked. And yes, I do expect you to know those dates. Yes, I understand. And I regret that I've been assuming, as the parties have through the litigation, that the dates were correct, that it was 2011 to 2015. That was not covered. But 67 to 2011 was covered. There's just never been an issue about that in the case. And certainly I regret any confusion. And we will look into that and file something supplemental if if necessary. But unfortunately, I'm not prepared to discuss those dates in detail today beyond what was assumed in the record. Miss Casper, let me move on to something a little different. Why didn't why didn't the city respond to the request in the first place? That has become an issue because then they're arguing that there's a waiver of of the undue burden exemption. They they are, Your Honor. So the record doesn't say why there was no response. But we don't dispute that there was no response. FOIA provides for what happens when there is no response was just that it's deemed denied. So other than that, you know, we don't we don't know why we did. When when the lawsuit was filed, that's Genovo review. And at that time, the CPD asserted exemptions, including that the injunction barred the disclosure at the time of the request. And that was, you know, in the answer immediately after the lawsuit was filed. You also argue quite a lot about the cost of going through these records if they were to be required to be released. And it sort of begs the question, what's in a 1967 file that could possibly still be confidential? We're talking 50 years ago. We just we just don't know one way or another, Your Honor. And those are they'll need to be going through individually, page by page. And this is not to make redactions to protect police officers. This is simply to review for privacy interests. And it may well be that when it comes to the very old files, it goes faster and it may not go faster because those are all on paper or most of them are. So we just, in fact, don't know. And this is one of the arguments we make is that the court should remand for to allow the city to assert the unduly burdensome exemption. And one of the things that would get litigated is, you know, the extent of the burden. But before getting to that, Your Honor, we do argue that the circuit court, once it concluded that the records, excuse me, as we've understood it to be from 1967 to 2011, were not improperly withheld or we can call those the ones covered by the injunction were not improperly withheld. That should have ended the case because at that point, the court under the plain language of FOIA lost jurisdiction to award any equitable remedy, including production of the records. The precise language of FOIA is that a court circuit court shall have the authority to authorize the production of public records and to order the production of public records improperly withheld. Whether records were improperly withheld is gauged at the time of the FOIA request, which is precisely how the United States Supreme Court has interpreted the mirroring federal provision in Kissinger holding that there is no question that the propriety of a withholding is gauged at the time the request is made. And other federal courts have applied that principle consistently. But isn't that become a game of gotcha, though, you know, if there's an injunction in place for just a short period of time and you happen to be unlucky enough to make your own request at the same time the injunctions in place, it basically forces them to make a whole new request, doesn't it? They can make as many new requests as they want, your honor, and it's costless and it's not and it's simple. In fact, it can be done by simply sending an email or a letter to the department. But they make the point that if they do that, they get back to the end of the line because the city doesn't have enough people processing FOIA requests and there's a huge backlog. If they do that, they restart the five day clock. So whatever the day clock, I'm talking about the clock of, you know, we all know that you cannot get 40 years worth of records reviewed in five days or five days. So there's this game that goes back and forth where, you know, are you redeeming it tonight? We're just going to sue you. And then while the suit's going on, you know, maybe years later they finally get the records. But there's other things going on ahead of them now. Well, there are other things going ahead, but there's nothing has stopped Mr. Green or anyone else in that position from refiling or sorry, not refiling, but submitting a new FOIA request at any time. I mean, we filed as a practical matter when he submits a new FOIA request. That's when you're going to file what you should have filed the first time and said unduly burdensome. But the underlying question is, and it has to be, were these files wrongfully withheld in the first instance? Right. Because if they were subject to a valid injunction at the time you were served to write, Kissinger's case says you make the determination of the time that the FOIA request is made. And if it's a valid injunction, then in that particular case, you haven't wrongfully withheld, which essentially is your argument. Leaving undecided this problem of from August of 2010. We will get to the bottom of that, your honor. That's correct. That's our argument. Um, and it's, and it's the key feature of that argument is that it's jurisdictional. And so if the court as here found the records were not improperly withheld, then the court had no jurisdiction to order production. Um, and this is a statutory jurisdictional rule and the bright line that it creates makes sense. In fact, there's really nowhere else to put that line. Um, a case by case approach isn't going to work without a bright line rule. The determination, whether records were properly or improperly withheld, um, public public bodies could become liable for improper withholding some months or years down the line. Even when the denial at the time was perfectly fine. People might even be encouraged to file a lawsuit anytime there's a perfectly good denial simply to keep things alive long enough to see if maybe something will change to trigger production to remove the obstacle to production. Um, but one thing I do want to point out in this case is that, um, there's some discussion in the, in the briefs about, or the other brief about, um, the city attempting to hide the records or not wishing to produce the records. And I want to emphasize that that's not at all, um, an accurate description of the case now for, if the court will permit me to go a small amount outside the record, the 2011 to 2015 production is complete now. So those have been produced. The injunction was vacated because the city took an appeal from its entry. And then the city fought also in that case, all the way to the Supreme court to have invalidated the provision of the contract that required the city to destroy the records. So any suggestion that there's an attempt by the city just to not want to produce these is not correct. Our objection in this case is to the staggeringly broad request that was made. As your honor noted. Casper, as justice Hoffman mentioned earlier, I mean, there was a way for you to make this completely ignore a FOIA request and then make these arguments, you know, years down the road as though everyone should just pretend that didn't happen. And, you know, we're making all these esoteric arguments that have nothing to do with the fact that this, that CPD completely ignored the request. What do you say to that? Your honor, that, that was regrettable. And I don't, um, endorse the, just the, whatever happened. We don't know what happened. There's 10, 12,000 FOIA requests per year. Perhaps this one, um, somehow, unfortunately was, was went through the cracks. Um, I wish that I had an explanation. I don't. And I don't, um, suggest that that was an appropriate safe to assume that your underlying argument was for whatever reason they were withheld. It's irrelevant because the circuit court lacked the jurisdiction to order them produced in the first instance. Well, that's correct. We, we, as long as the there's a, it's clear that they were properly withheld, which they were to the extent they were covered by the injunction, the court lacked jurisdiction. It doesn't really matter why, um, there was no response. Although I justice Cunningham, I, I agree the better method of proceeding is to have filed a response. There's no question about that. Um, at this, there was DeNovo hearing on this in the circuit court at that time, the proper exemption was raised immediately in the answer in February, 2016. Um, the injunction was out there. Everybody knew about it. Um, a new request could have been filed as soon as it was vacated. Um, it wasn't. Miss Casper, your, your, your time is up, but we'll let, uh, justice walk and go ahead with his questions. Yeah, I, uh, am I, am I correct in reading this record that the first judge that heard this case is the one that found that it was not wrongfully withheld. It was the second judge that decided it was wrongfully withheld, but she had some powers to order the production because the injunction had been vacated. The first judge, yes, found that they were not improperly withheld. The second judge, um, didn't quarrel with that finding, but thought that, that you had to look at what was happening in the litigation and that if, um, the obstacle to withholding has been removed, then, you know, continued holding onto them would be, um, you know, it was not permitted. Thank you. Are there any other questions from the panel? No, if not, miss Casper, is there anything else you want to conclude with? Um, your honor, I will address the remaining points on rebuttal. Thank you. Thank you very much. Council for, uh, Charles green. Uh, you may proceed when you're ready. Uh, thank your honors. May it please the court. This case is about enforcing Illinois clear public policy that a primary duty of public bodies is to provide all persons with full and complete information regarding the affairs. Mr. Kozloff, we only have 15 minutes for your argument. We know what's behind the statute. Um, I'm going to hit you with a question right away. You've got a statement in your brief saying that either this court or the Supreme court held the injunction void. I'm holding the Supreme court decision. You referenced paragraph 17. It doesn't say that the thing that was void was the arbitrator's decision that was held void as against public policy. They said that once it was held void, there was no legal basis for the entry of the injunction. And therefore it was vacated, but no more in either of those decisions that suggest that injunction was void. Um, I don't think either decision addresses the specific argument of voidness, um, but they do, you said in your brief, you said in your brief that it was held void and you referenced paragraph 17 of the Supreme court's decision. It doesn't say that the Illinois Supreme court says uses the language legally baseless, um, with respect to the injunction. And that's what we are referencing in our brief. Legally baseless, legally baseless does not equal void. Void is something entered by a court that lacked jurisdiction of either the person or the subject matter. If it's legally baseless and we either reverse it or vacate it, it's voidable and the cases are quite clear. Well, you know, in fact, the US Supreme court case upon which, uh, in race special prosecutor is based, it has to be followed until it's right. And I think in this case, at the time that you served your request, the injunction was valid. It had not been reversed. And that's why this case is a lot like, so how do you get to wrongfully caused? Sure. I think, you know, I think the court's right. And that's why it's a lot like special prosecutor because respect for the judicial process requires public bodies to obey court orders until they are invalidated or avoided as the case may be. And in this case, but the, but the determination is whether a request is wrong. Documents are wrongfully withheld is made on the day that you serve your request. That's Kissinger. That's the US Supreme court. And it's quite clear. Well, we would disagree with that. Your honor. Um, Kissinger is clear that the court lacked jurisdiction to issue the remedy it did on the basis that the records were wrongfully transferred, but that did not affect the jurisdiction of the court to hear the dispute between the parties. And that's what CPD is arguing here. So what the CPD is arguing is that the circuit court, once it found that the records were not wrongfully withheld, the circuit court lacked jurisdiction to fashion any remedy at all. Right. And that's incorrect. Under the plaintiff statute, the court has the power to do two things. One is to enjoin withholding. And the other is to order the production of records wrongfully withheld. CPD, let's get to the wrongfully withheld. Why do you say they were wrongfully withheld? Under the terms of the statute, Mr. Green's demand for the records and the public body's duty to produce the records began at the moment Mr. Green made his request and continued up until the time the public body proves by clear and evidence that an exemption applied, which in this case never occurred. You seem to equate the exemption with wrongfully caused. Because they didn't raise an exemption, they were wrongfully withheld, but they were withheld pursuant to an injunction. They couldn't turn them over. And that was in the way of the special prosecutor, which is that simple. That's what it was about. I think this case is a lot like special prosecutor. And if we look at the history of that case and what happened, the city went to Judge Tooman. Mr. Cosgrove, you got a real advantage on in-rate special prosecutor because it was this division that decided it. And two of the members on this panel were on that case. And I think this case is a lot like special prosecutor, where the city went in front of Judge Tooman and asked Judge Tooman to modify the protective order, which was denied. If Judge Tooman had granted the city's motion in that case, while special prosecutor was pending and modified his protective order to make clear that it was all right for the FOIA requester to get the records, the city would have just produced the records and that appeal never would have even happened. Well, the city may have produced the records, but the fact of the matter is if they were not wrongfully withheld on the day the request was served, and in that particular case, there would be no jurisdiction to order any relief. Then it wouldn't have mattered that Judge Tooman failed to modify his protective order and the case shouldn't have continued from the get-go, but it did. And the reason is because this comes from the GTE Sylvania case, which is exactly what this court relied on in writing special prosecutor, is that it's not really the public body doing the withholding, as that term is used in the statute, when there's a court order that applies to it. It's the court's order that is in interest in the FOIA dispute. The public body has no interest in whether or not the order applies or doesn't apply or is valid or is not. It is the court's interest in making sure the judicial process is respected. That's markedly different here because CPD did the exact same thing they did in special prosecutor. They went to the Court of Appeals to invalidate Judge Flynn's injunction, and they won. And from 2016 through 2018, CPD agreed that that ended the case and that they were compiling and producing records in response to Mr. Green's FOIA request. It wasn't— Can I ask a real simple question, just to get you pinned down a little bit? All right, that's what I'm here for. The date that Mr. Green served his FOIA request— I'm sorry? Were those documents wrongfully withheld on that date? Yes, they were. And the reason they were— There was a valid injunction in place. Yes, and let me explain, Your Honor. The reason that they were wrongfully withheld was because CPD did not respond within the five-day statutory period. And within the jurisdictional statute, that is a wrongful withholding of records because they didn't respond. And that's a justiciable dispute between a FOIA requester and a public body. Now, when you come to court, the FOIA requester has options when presented with an injunction. They can go to the court and ask the other court, should this apply to FOIA requests? In this case, that had already happened. There was an appeal pending. And the parties agreed that that appeal determined the outcome of Mr. Green's case. And Judge Flynn rightfully waited. And that is seen throughout federal cases in a wide variety of contexts involving sealing and other places, such as the Citizens for Responsibility and Ethics versus the Department of Justice. The courts routinely order parties to go out and seek clarification from other courts while cases are pending. It's not jurisdictional in nature. And the existence of an injunction by a judge cannot determine the jurisdiction of another court to hear a FOIA dispute between a requester and a public body. The other court has an interest in making sure its orders are followed and that the judicial process is respected. And that is why there is an exception in FOIA for those cases. Well, Mr. Cosgrove, I don't think your opponent is arguing that the circuit court did not have jurisdiction to determine whether the documents were wrongfully withheld. I think she concedes that. A court always has jurisdiction to determine its jurisdiction. But once it determined that they were not wrongfully withheld on the day that the request was served, at that particular point in time, her argument is the court had no jurisdiction to fashion any relief. Right. He said that it was wrongfully withheld, but not sanctionable. So he did say that by not complying with the request, the records were wrongfully withheld. He just said that for purposes of sanctions, I'm not going to sanction you. And then when he examined the law and the state of affairs at the time that he reached his decision, when his injunction was invalidated, there was nothing barring withholding. So the outcome of this case doesn't depend on jurisdiction or the power of the court to hear this dispute. Mr. Green only submitted one FOIA request. The court can't have jurisdiction over just a part of the request because there's another court order somewhere that governs this. And even GTE Sylvania, which handled an injunction from the District Court of Delaware, accepted issues where, and cited two, I think it was a case called Walker versus the city of, for the Montgomery, where they accepted injunctions that were, only had the appearance of, I can't, I can't get exactly right, but it was Walker versus the city of Birmingham where they said transparently invalid or injunctions that only had a frivolous pretense to validity. Those would be accepted. Both these cases, GTE Sylvania and special prosecutor would have been decided differently if decided at all, had those courts come back and said, no, it's fine to release these documents through FOIA. That was the process followed in all of these cases that we've cited, because it's not a jurisdictional issue, whether there's a dispute between a requester and a public body as a result of an order. And one thing really clarifies this, and I think this is really important, is that Mr. Green filed his request in the context of another administrative judge's order requiring the records he wanted to be destroyed. That's when he filed his request and he did it to make sure the records were going to be preserved, which was only resolved last year. And Mr. Kusgrove, I'm going to read to you from GTE Sylvania, word for word. There is no doubt that the federal district court in Delaware had jurisdiction to issue the temporary restraining order and preliminary and permanent injunction, nor were those equitable decrees challenged as only being frivolous pretense to validity. Although, of course, there is disagreement over whether the district court erred in issuing the permanent injunctions, under these circumstances, CPSC was required to obey the injunction out of respect for the judicial process. And then it goes, we conclude that CPSC had not improperly withheld the accident reports from the requesters under the Freedom of Information Act. Exactly what applies in this circumstance where Judge Flynn's order was invalidated by this court as beyond his power to enjoin public bodies from complying with FOIA. And that is exactly the result we are asking for here. So with counsel, before you get to that next point, Justin Hoffman alluded to special prosecutor a moment ago, and we've had this is probably the fourth or fifth case I've seen involving disclosure of Chicago police records. And am I mistaken that the same records have not already been released to Jamie Calvin and other litigation? Yes, I thought that this issue had been resolved and all these records were out in the public domain by now. The Calvin case concerned the underlying data related to the CR files. The request made by Mr. Green is different because he's asked for the actual files. And one of the reasons is because you can't tell from the data a lot of information that members of the public need to examine the accountability system that CPD uses. A lot of it is discovered through actually examining the investigations themselves, which they do not have. So it is a key distinction between the two. Thank you. So another thing I'd like to throw out here, which is a hypothetical, which I think also elucidates this point that CPD is making and just how wrong they are about jurisdiction. If instead of an injunction being issued before Mr. Green filed his request, if CPD had begun to produce the records Mr. Green asked for without asserting an exemption, and then all of a sudden a court came in with an injunction and it barred the city from producing those records, they would not be coming to court claiming they do not have to comply with that injunction because you only examine the time period at the moment of the request. They would be saying we do not have to produce these records because there's now an injunction and we are barred from doing so. Um, similarly, uh, they would not be coming to court and crying that there was no jurisdiction. This is not a jurisdictional issue. The dispute already existed as a result of the wrongful denial. Mr. Green doesn't know about the injunction that existed. He found out early in the litigation and CPD is bound by its agreement to let the FOP case decide this matter. That's why this litigation has gone on. Mr. Cosgrove, are you suggesting the parties can agree that the court has jurisdiction when it doesn't? No, absolutely not. So either it had it or it didn't. Correct, and but that's the point is that CPD in the summary judgment briefing all the way through it never even raised jurisdiction because- Wait, wait, wait, wait, slow down. It doesn't make any difference that the parties don't raise jurisdiction. Either it exists or it doesn't. True. And that's why what this dispute's really about is an affirmative defense of impossibility, which is how they pled it in their answer. They were stuck. There's a court order that applies to their records. They don't know whether they should comply with their obligations under FOIA and they come to court to resolve that dispute. The judge, Judge Flynn was empowered to resolve that dispute. And by the time the city actually got around to arguing this case years later because they wanted to assert an undue burden exemption, that's the reason they raised this years later, they argue there's no jurisdiction. But that's not, that should not be allowed. And it's inconsistent with construing the FOIA statute in a manner of expediency and efficiency. This case, they could have raised this defense in 2016. They never did. 2017, they didn't do that either because they said they were complying with the request. So they keep saying, well, why didn't Mr. Green just refile his request three years into this litigation? That's why. And even if this court remands on the basis of jurisdiction, Mr. Green has a right to claim they're equitably estopped because they agreed to produce his records. So that was unresolved by Judge Flynn because when he consolidated this case in 2016, the parties understood that the appeals court was already going to resolve this. Mr. Green would have challenged Judge Flynn's injunction himself when he came to court. But by the time he got there, it was already on the verge of being resolved by CPD itself, claiming that it was not proper. So this dispute's not jurisdictional in nature. And Judge Conlon was right to withhold the records. I mean, excuse me, to order production of the records because by the time she looked at it, CPD had no exemption, never claimed an exemption under Section 7, and had waived its undue burden exemption under Section 3G. And there was nothing to bar the production of the records at that point. And that's when she made her decision and she properly decided that the records should be produced. Counsel, your time has expired, but we'll let you make a conclusion at this time. Thank you. Well, let me first guess if there's any other questions from the panel members. No, Justice Hoffman asked all my questions for me. So thank you, Justice Hoffman. I'm sure he's glad to oblige. Counsel? Sure. You know, this case would be different if CPD had responded on time. This case would be different if CPD had complied with multiple court orders to cooperate and to produce records, which they did not. This case would be different if CPD had come out of the gate asserting its rights, which it did not. It would be different if they had not agreed that the case was resolved back in 2016. But none of those circumstances are here. And the way that you detect patterns of misconduct is through time. And that is why Mr. Green and the public needs these records. There is no accountability without transparency, and there is no transparency without the production of records. Thank you, Your Honors. Thank you, Counsel. Ms. Casper, you have the floor for five more minutes. Thank you, Your Honors. Just a few quick points. Um, as we've discussed— Casper, before you start, I have a question just to follow up to what Mr. Kosogod just said. You know, would it be—he pointed out that if CPD had just complied, had answered, they wouldn't be here now. So it seems to me that what CPD is asking for is essentially to benefit or to have the benefit of claiming a defense that they would not have—that you're not entitled to because essentially you ignored the request. And it seems to me that that's what's bothering your opponent, whether or not you basically get a pass by your own bad behavior. Bad behavior shouldn't result in a pass. And that's what seems to be bothering him. Can you respond to that? Yes, Your Honor. Thank you. As I've noted before, it was regrettable that the request was not responded to. But we did, throughout the litigation, attempt to work with Mr. Green regardless. Even though we hadn't asserted the exemption, we worked with him to narrow the request and had several meetings on that issue. We couldn't get to an agreement because, as the record shows, Mr.—as his attorney explained in the circuit court, at those meetings he insisted that the city provide assistance with undoing his conviction and exercise its influence with, if any, with the state's attorney's office. So those discussions were not fruitful, but there were attempts to arrive at a narrower production and come to that result. But what we're dealing with here, it is a jurisdictional rule. If the case were—the case should have been dismissed when there was a ruling that there were—that files subject to the injunction were not improperly withheld. And again, that FOIA request could have been filed again—sorry, submitted again at the time that the injunction was vacated. And Mr. Kozaklaid noted or stated that the rule was not jurisdictional, but the statute, the FOIA statute, says that it is. And once the court rules that the withholding is not wrongful, the—they cannot fashion any remedy of any kind. And that should go to the comments— Your argument isn't that the court had no jurisdiction at all. I think your argument is that the court had no jurisdiction to order production of records that were covered by the injunction. Yes. You would withheld the 2011 to 2015 records also, and the court ultimately ordered you to produce them.  And that certainly wasn't the subject of the injunction. So, which is— Right, exactly. As the partial relief. Right. The courts had jurisdiction to determine whether, at the time of the request, the records were properly withheld. It did that. And at that point, it could not—once it found that the records were not improperly withheld, it couldn't order production of the ones that it found were improperly withheld. Exactly right, Your Honor. And just to briefly address the argument related to estoppel or comments by opposing counsel, we don't—the record doesn't support that, but regardless, when a rule is jurisdictional and there's a jurisdictional reason for the court to not be able to order production, it also can't order other equitable remedies, such as enforcing some kind of estoppel or something of that nature. And the CPD certainly did raise the issue that there was no improper withholding at the time of the request in its answer and in all the summary judgment motions, repeatedly. Finally, Your Honor, we will respond on the issue of the proper dates after the argument. Our argument was always intended to accommodate production of whatever was covered by the injunction. If we haven't done that, we will try to set the record straight on that and get to the bottom of it. And for all these reasons, we ask that the judgment be reversed or that the court remand so that the CPD may assert the undue burden exemption. Thank you. Thank you, counsel. The court will take the matter under advisement. At this time, the argument is concluded and the court administrator will terminate the call. The panel will log into a separate call for the purpose of deliberation. Thank you.